The next case today is Terrence P. Kriss v. United States, Appeal No. 21-1206. Attorney Pato, please introduce yourself for the record and proceed with your argument. Good afternoon. This is John Pato representing Appellant Terry Kriss. If agreeable to the court, I'd like to reserve three minutes for rebuttal. Yes, you may have it. Thank you, Your Honor. In this case, we are confronting the bankruptcy dischargeability rules regarding tax debt, where the Congress enacting the statute has created a very clear structural text and a classification between unfiled tax returns and late filed tax returns. Here, the debtor filed a tax return late, and under Congress' classification should be subjected to a two-year waiting period before the tax debt becomes dischargeable, along with every other debt in the bankruptcy proceeding. The problem with the opinion below is that it adopts a reading which reclassifies virtually all late filed tax returns as unfiled tax returns, thus visiting violence upon the very structure that Congress carefully calibrated with the statutory classification. We're therefore asking this court to reject that interpretation of the statute and adopt an alternative interpretation put forward most recently by the 11th Circuit in the Schecht case. In doing so, we would submit respectfully that that comports with the clearest interpretation of the text, not just viewed in isolation, but also in this context of the full provisions regarding bankruptcy dischargeability and tax returns. Our textual interpretation has the additional salutary effect of comporting with the available Congressional intent through the legislative history and indeed for sound policy regarding the bankruptcy discharge. So we're clear on this, Mr. Prato? You're asking us to abrogate the fee? That's correct, Your Honor. That's what we're asking this court to do. The textual reasons for preferring the Schecht approach to the non-dischargeability rules regarding tax returns stem primarily in addition to the statutory structure of the tripartite presentation of the statute to a fair interpretation and meaningful interpretation to the modifier applicable that precedes both applicable non-bankruptcy law in the hanging paragraph and the parenthetical phrase of applicable filing requirements. As the Supreme Court has commanded in the Ransom case, a case that does not appear to have been presented to the Fahy panel, it was not discussed in its opinion, but is a subsequent development that would be important that was embraced by the Schecht panel in the 11th Circuit and indeed has been now cited no less than 230 times in subsequent cases to 2014. The Supreme Court and Ransom in its progeny say that applicable has to have some restrictive work on a statute when it's used and so cannot be equated with simply all, but has to be restricted to the relevant, suitable or fit terms that it modifies. And so the reading that applicable would modify here would be the non-bankruptcy law and the filing requirements that pertain to the definitional components of what is a tax return. Indeed, the 11th Circuit characterized this interpretation of applicable as the more common sense reading of the statute. Now, as between an interpretation of applicable that means related to definitional requirements, as the 11th Circuit did, or a more capacious definition of applicable that essentially means all filing requirements and all applicable bankruptcy law. In addition to preferring the common sense interpretation, as the 11th Circuit does, and indeed the Supreme Court commands under its bond case that when confronting issues of statutory definition that the natural common sense interpretation should be considered and should be taken care of. But if there was ambiguity as to which interpretation of applicable were preferable, this court would be guided by the additional Supreme Court injunction to interpret any ambiguities in the bankruptcy statutes in the favor of the debtor, in this case, appellant Chris. This is a long-standing principle of bankruptcy law and indeed the baseline rule of a bankruptcy petition is that unsecured debts are presumptively discharged. And so finding a proper location and an exception to discharge would require a strict construction of that extraordinary treatment, which is what we counsel against doing under the interpretation of the statute put forward by the 11th Circuit and with meaningful content to the word applicable. Now – Where do we get the definition of applicable that you would have us apply? Oh, it's from – it's cited in our main brief. It's the ransom case by the Supreme Court. No, no. I don't – I know what ransom says. In other words, what is the relevant law principle that limits? Oh, the application – the 11th Circuit's approach would be – so the context of this phrase is in a paragraph-long definition of return. And so a reference to applicable non-bankruptcy law and applicable filing requirements would be applicable to the definitional question of what is a return. And so an example that's cited in our brief on page 28 is a jurisdiction like Massachusetts that has a regulation like the one that appears at page 28. That would be a definitional requirement because it's a regulation that describes what a return is under Massachusetts law. So that would be an example of an applicable filing requirement. By contrast, a regulation or a law that was not definitional to a tax return but had to do with, for example, the deadline on which the return was to be filed by or the – we cited, for example, the stapling rule. That doesn't speak to whether it's a return or not. And so that would not be an applicable filing requirement or would not be applicable non-bankruptcy law. And so the Eleventh Circuit approach to applicable that restricts it to definitional laws or regulations would be the clear line of distinction that we would advocate for following that Eleventh Circuit position. Judge Lynch, did you have a question? I didn't mean to – I've got double questions. Yes, thank you. It seems to me that you are allowing – you would say as to federal tax returns, there would be one uniform rule which would not be the Criss rule. That as to state tax returns, it would vary with how the state chose to define. And under our Criss opinion, we refer to an SJC decision which seems to define return so that you would say, if I'm understanding you correctly, one would not have to overrule Criss to reach the result that you would like to see in this case. I think that is correct if I understand it properly. One aspect of bankruptcy proceedings, of course, is that claims are filed by a variety of different substantive laws. So you can have a state-based claim that grounds a debt that's being addressed in a bankruptcy. You can have a federal-based claim. And so Congress, in using this broad language in the hanging paragraph, has tried to allow some flexibility because indeed the states may have different rules defining returns from the federal government, which is why they use that boilerplate term, applicable non-bankruptcy law. And so, Judge Lynch, I think that would mean applicable federal law if it's a federal tax claim and applicable Massachusetts law if it's a Massachusetts-based tax claim. Well, let me pursue this a bit further. When you gave a definition of – pardon me, I'm being redundant – when you tried to give content to the term definitional, you said, all right, if the tax authorities promulgate a reg that defines a return, you give deference to that. All right, what do we do with court decisions? What do we do with our reliance on the SJC opinion? It's not the administrative agency. It's not the tax authority. I think that would be covered, Judge Lynch. I think applicable non-bankruptcy law could be statutory law. It could be a rule of decision from an authorized court. And indeed, the canonical example of definitional law regarding a return is actually not statutory in the federal system. It's this Beard case that gets frequently discussed, which is a judicial determination of what is a return. So it's a judicial source of law for a definitional term of what constitutes a tax return. So the source of law, Judge Lynch, could be statutory, it could be regulatory, and it could be court decision as well. That would all be applicable non-bankruptcy law. Okay, so I'd like to pursue further a question that Judge Kayata asked you that has to do with, in practice, what rule are we being asked to apply here? The IRS seems to be advocating a rule that, oh, there should be no bright-line rule about late tax returns. There should only be a rule of, is it helpful to us or not? And that would lead to a case-by-case determination by the IRS, which would then present its argument to the bankruptcy court as to whether it had been helped or not. Or they might say, no, it didn't help us, and then the bankrupt is going to say, oh, yes, it did help you. And, therefore, the practical conclusion I draw is, gosh, that's an awfully hard rule to administer. It doesn't give any real guidance to bankruptcy courts, who are trying to move quickly, after all, and not wait for determinations by tax authorities. And is that really the world that Congress intended to set up? I think it's certainly the world that the Supreme Court envisioned. So I think there's an easy way and a more complex way to answer your question. The easy way to say is that in this case, in this appeal right now, which is a judgment on the pleadings, we are simply asking on the statutory matter to reject the Fahy rule in favor of the Scheck rule, and then we can see what happens later on. Now, if the court wanted to go further than that and say, well, we want to give some direction to bankruptcy courts as what's going to happen if we reject the Fahy rule, then precisely for the reasons that Judge Lynch is articulating, we would advocate adoption of the objective approach to interpreting the Beard Case, and that's precisely because that avoids these sort of fact-intensive questions of motivation and utility. And indeed, the very progenitor of the Beard Case, which is Supreme Court cases such as Florsheim Brothers and the Zellerbeck case, focus on the return itself. Help me. I don't know what you mean by the objective rule. I think what you mean is if it's late filed, that's never a problem. That's correct. So let's keep this in context. What we're talking about is the question of whether Document X is a return. Now, under the history of the Supreme Court, no one ever had a question about whether a 1040 is a return. A 1040 is obviously a return under the Duh Doctrine. The question is whether we have a different document that's not a 1040 constitutes a return nevertheless. It's like a constructive return, and that's what gave rise to this Beard Test. And so the Beard Test, as you look at the document, is it signed? Is it filled out properly? Is it an honest and good-faith attempt to fill out the document? So we don't get into extraneous discussions of lateness and motivation and whether the debtor is a good person or not. The question is, is it a protest return with all zeros filled out? So it's the document, but it's not an honest and good-faith attempt. That's the objective approach. You just look at the return and analyze, is it an honest and good-faith attempt to complete the document? If it is, it's a tax return. It's a nice, simple, bright-line rule. And so if the court wanted to reach further, it could adopt that. That depends. It strikes me that Congress has a strong interest in encouraging timely filing of tax returns, and that this rule might have been meant to further that interest. I'll give you one minute to reply, but your time is up. I think it would be deeply implausible to ascribe to Congress the intent to encourage timely filings by amending a definition of return in the Bankruptcy Code. If Congress wanted to encourage timely filings, they could make late returns non-dischargeable by striking that provision from the Bankruptcy Code entirely, but Congress preserved the distinction between late returns and no returns. And so we have to take Congress's statutory structure seriously. And we have no indication in the legislative history that that was Congress's intent. By contrast, we do have indication in the legislative history that what Congress wanted to do was sort out the 60-20-A, 60-20-B debate. You're getting yourself into trouble. You've moved from text clarity into look at legislative history for ambiguity. We both know the drill, so let's end it. Very well. Judge Kayada has a question. Yes. How often does this arise, this issue? Of a late-filed tax return? Yes, in a bankruptcy. In other words, you have a case here where someone has not paid their taxes, not filed a return. Then files are returned more than two years prior to a bankruptcy and the issue of discharge comes up. I think it comes up frequently. I can't give you a specific statistic, Judge Kayada, but the fact that it's generated case law in every circuit suggests that it's a non-trivial occurrence. There are hundreds of thousands of bankruptcy petitions that are filed every year. When debtor Chris did file his tax return and finally sort out his backlog problem with the IRS, he did not fall into bankruptcy for five years later. People do clean up their taxes and they get themselves straight with the IRS. Then later on in life, they may have all sorts of bankruptcy problems. The question is whether Congress intended for procrastinators like Mr. Chris to forever bar them from a bankruptcy discharge or to put them in the late category and say, you know what, you don't get to file bankruptcy right away in case you try to do something sneaky. But after two years, you go on with your life and your debts are dischargeable like any other debt. Thank you. Thank you, counsel. Thank you. Thank you. At this time, Attorney Potow, please mute your audio and video. And Attorney Chevalier, you have a two-minute argument. Please introduce yourself on the record to begin. Good morning. This is Attorney Tim Chevalier for the appellant Terry Chris. I was the attorney at the trial court below. Just following up briefly on the factual side of this, the IRS has raised some alternative arguments in their brief, suggesting factual reasons to rule in favor of the IRS. And just where this is a motion for judgment on the pleadings and all inferences must be taken in favor of Mr. Chris, the allegations in the complaint where there's also misrepresentation, and we haven't developed the facts fully to respond to the IRS at this stage under either the objective or subjective approach to the BEARD test. So if those factors are considered, it needs to be remanded. But today we're asking, focusing on having FAHEY itself overturned. Just to focus on that narrow issue, Mr. Chevalier, doesn't that tell us that any of the tests that are being proposed to us are ones that invite us to or invite the bankruptcy court to engage in fact-finding? Your friend suggested that it's no problem to say you just look at a document and say good faith or bad faith. The document speaks for itself. I've never been able to be that quick at divining good faith on that basis. So what you're inviting us to do is to create something other than a bright line, perhaps a blurred vision on this issue. Aren't you? That's correct, Your Honor. In all the cases I've seen since the FAHEY case, none of them have adopted this bright line issue. They've all adopted more of a nuanced view. So that is the trend line I believe the cases are going. Our objective here is looking at the- We should get on the train then and follow along, is that it? Yes, Your Honor. It is a little bit more work, but we think it's a fair result. We think it comports more with the statute. This time I've heard nuanced used for murkiness, but it's a fair use of the term, very elegant. All right, thank you. Thank you, Your Honor. Nothing for this time. I see my time is up, unless you have further questions. No, thank you. Attorney Chevalier, please mute your camera and your audio. Attorney Avetta, please unmute your devices and introduce yourself on the record to begin. May it please the court, Julia Avetta for the United States. I first would like to address a question that Judge Lynch asked of my brother, which was whether the IRS endorsed a bright line rule. And my brother incorrectly stated that the IRS did not. The IRS, in fact, does endorse a bright line rule. No court has followed this rule yet. But the IRS believes that its approach is very much the clearest and weighs the equities most fairly on both sides. That bright line rule does not involve determining whether what has been filed constitutes a return under federal law or applicable non-bankruptcy law for the state. It focuses instead on the nature of the debt, whether the debt has already been assessed or not, because assessed and unassessed tax debts are treated differently under the bankruptcy code. Ms. Avetta, may I interrupt you just a bit to get this in context? What is the department doing across the country? Presumably in the 11th Circuit, it's following 11th Circuit law. Presumably there's other law in other circuits, but I haven't really found it. What's it doing in other circuits following this view that you're expressing now? And finally, what is it doing in the First Circuit? Is it following FEHI or is it following your own, let's call it tweaking of FEHI? It is following the law of the circuit in each circuit, Your Honor. In one-day late circuits, such as this one, the 10th Circuit and the 5th Circuit, the United States treats as non-dischargeable any tax debts for which tax forms were filed one or more days after the filing deadline. We follow the law of the circuit. In the circuits that have adopted the Beard Test, which was the test that existed prior to amendment of the statute and which numerous courts, including the 11th Circuit, were codified by that amendment, we look to the fourth prong of the Beard Test in particular to say, has the debtor made an honest and reasonable attempt to comply with their obligations under the tax law? And in those jurisdictions, as we note in our brief, the question is generally concentric with the IRS return because the delay in filing goes both to the debtor's honest and reasonable attempt to comply with his obligations under the tax law and generally comes after assessment so the debt is treated differently under the Bankruptcy Code and in the view of the IRS. So the Beard Test jurisdictions more closely track the IRS's view, but the law of the circuit in any circuit that we're in is the law that is followed and I'd like to speak a little bit to that division of authority between the circuits. There are, prior to the amendment of the statute, as my brother observed, there were two readings of the Beard Test. There was one reading that predominated that said, an honest and reasonable attempt to satisfy a debtor's obligations under the tax code is not evident in a form that the debtor waits to file until after the IRS has gone to all of the trouble of reconstructing his tax returns for him. And it didn't focus on assessment as the dividing line, it was not a bright line rule, but the outcome was consistent. The Eighth Circuit was an outlier even then and said, as the court has observed, if he filed something that isn't fake, that isn't fraudulent, then that's good enough. And there are several problems with that approach, which the Bankruptcy Code frankly solved through the enactment of this hanging paragraph because the Colson Rule, which is the case in the Eighth Circuit, which says just look at the form, if there is one and it isn't fraud, you get the discharge, is inconsistent with the requirement in the hanging paragraph that a return satisfy the requirements of applicable non-bankruptcy law, including applicable filing requirements. Now, whether you take an applicable filing requirement to be a deadline or merely that the form serves some utility or that it be correct, that it correctly report the debtor's own obligation, the Colson Rule requires none of that. It's our position and other courts have so found that the Colson Rule did not survive the amendment to the Bankruptcy Code. Lower courts, bankruptcy courts within the Eighth Circuit are now questioning Colson and are applying the Fahey Rule on the records before them. They're going by the one day late rule reading of the hanging paragraph. And as most recently a district court in the Southern District of New York observed, Colson itself was facially limited to its fact because it was distinguishing other beard test cases on the basis of what factually had happened in debtor Colson's case as opposed to debtor Hinton-Lang's case or debtor Hatton's. There were a number of different parallel proceedings in various circuits. So where we are now is the two readings of the beard test come in conflict with this amended statutory provision. One reading survives and can be read consistently with this provision. And that is the beard test as adopted by the Eleventh Circuit. And the case is not Scheck, the case is Justice. It dates from 2016. Scheck cites to justice and follows that test, but provides no further elaboration of it because that was on record already in justice. All Scheck does is criticize Fahey. And that gets us to where we are now, which is that Fahey is binding on this panel. Fahey is the law of this circuit. It is binding precedent. It is dispositive of this case. The en banc First Circuit declined to rehear Fahey in 2015. The en banc First Circuit declined to hear this case earlier this year. So the government has grave concerns as to the authority of this panel to abrogate Fahey without the input of the en banc court, which has declined to take a position. I think my question unleashed what I thought it was going to unleash, which is the government is faced with this very difficult problem of different jurisdictions and taxpayers are faced with the same thing to the degree that they're thinking this far ahead. And the question is how promptly to resolve that issue because it will remain no matter what happens in this case, even if we abrogate on Fahey. And so maybe an argument could be made for not the scenic route, but perhaps the direct route to the Supreme Court, which is simply to say Fahey stands. And now you have a basis, or your brother does, a basis for a circuit split. You've been put in the awkward position as I read all of the cases from the circuits. You've been put in the awkward position of never really being able to have standing to raise those issues. They've been cases involving state agencies or state laws. You did take a position early on after something even more important than a circuit split, a Posner-Easterbrook split occurred to the Supreme Court. The solicitor took a position on those issues, filed briefs on those issues at that time. They weren't apparently the proper vehicle for the Supreme Court to take that up. But the point is, I guess, as a matter of judicial administration, is why not let's get this going straight to, if somebody is interested in it, let it go straight to, and I suspect that Mr. Patro is. Let's go straight to make this argument to the Supreme Court. Your Honor, were that the case, it should go through the en bas court. This is beyond my salary bracket, probably yours as well. But it seems to me that judicial administration is a judicial administration. This is a very small circuit going through, as many are, transitions at this point in its membership. And this is a point at which the issue is teed up pretty clearly by effective argument on both sides of the case. So maybe I'm asking you to say something that I'm not in a position to say myself. But it seems to me that judicial administration argues in favor of saying that we've been presented with nothing that causes us to change the view that was expressed in Fahey. I can answer both sides of that question in the affirmative, Your Honor, and add no further clarity to the situation. But I would note that were this court to adhere to Fahey or seek to abrogate Fahey, the division among the circuits would not be resolved. The Tenth Circuit has taken the position that the one-day late rule applies in the context of federal taxes. And certiorari was denied in that case. Certiorari was denied in the Smith case in the Ninth Circuit. The Supreme Court has been presented with the opportunity to take a position on this split multiple times and has declined to do so. There's little to be gained from asking them a third or fourth time to, and I believe it was denied in justice as well, so fourth time, to consider an issue that the en banc court did not consider of sufficient importance to take up here. What, you mean this gets a special treatment because it's treated as en banc, comes to them en banc in this area? You know, I just don't quite understand if it's not important enough for them to take a split, you say it's an important split, take a split and deal with it, then it's not important enough for them. And it's not important enough for them to overturn Fahey or say Fahey is wrong. This presents it directly. It has not been challenged directly. I'm not sure that that's the case, Your Honor. I'm not sure that that's the case because the debtors in Smith and in Malo and in justice were looking at outcomes at odds with Fahey. And the split was evidenced then. And they sought to resort to the Supreme Court to say here is a clear division of authority and the Supreme Court at that time was not interested and things have not changed. They have to have a vehicle. I think you're effectively making an argument that I have some familiarity with the Fahey opinion. Yes, you do, Your Honor. And I think you're making an argument that if I had doubts about the correctness of that opinion, we should go en banc because it's not going to get straightened out otherwise. Yes, Your Honor. The law of the circuit requires it. The law of the circuit does not require that you go en banc. If you don't mind, I'd like to go back to a more basic question. I don't know that the text of the statute would compel us to abandon the Fahey Bright Line rule. So let's just put that aside. I don't actually know that the IRS is in a better position than we are to read the text. You want us to have a different rule. What are the advantages to your different rule? In this case, I should first note that the court's choice of rule is outcome neutral. The debtor would not experience a different result under the IRS approach than he would under the Fahey rule or, for that matter, under the Beard test as it survived the amendment to the Bankruptcy Code. But we would note that the IRS test, taken by itself in general, not as applied here, is the most nuanced of the three. It looks to other Bankruptcy Code contexts rather than judge-made tax law. It's practical at scale because it best balances the costs and the burdens among the parties of fulfilling the purpose of a tax return. And this goes to the point that my brother made about applicable filing requirements. And the Beard test courts that have adopted the Beard test have adopted this reading that my brother endorses. Applicable filing requirements are those that go to the nature and purpose of what makes a return a return. To the IRS, what makes a return a return is that it reports information sufficient to determine tax. A return is a term of art from ages ago that means report. I'm sorry, are you suggesting that the Fahey rule will somehow upset the IRS's law in other areas as to what is a return? It does not, Your Honor. First of all, the IRS applies the Fahey rule within the First Circuit and has done so consistently as have the courts. So everyone is clear within the confines of this circuit what the controlling law is and what the controlling definition is. The IRS does not act at odds with that within the circuit where it is bound by that rule. For its own purposes and in other contexts, the IRS does look to the Beard test to define what a return is. And what the IRS rule in a dischargeability context would do is move that inquiry to a different focus altogether, which is whether the return was filed before the IRS assumed the duty and the burden and the cost of reconstructing the debtor's return for him before he filed anything. Once that happens, once that cost has been borne, that's a sunk cost now, and nothing that the debtor files is going to teach the IRS anything new or inform the IRS with respect to that debt already determined and that debt already assessed, which is treated as an assessed debt now under the bankruptcy code. So the IRS test is more of one of balancing costs and burdens. And if you impose that cost on the IRS to and Judge Easterbrook explains this at great length in maybe it was Judge Posner. The pain opinion in the Seventh Circuit goes on at length about how anything filed on behalf of a debtor after the IRS has already made that determination serves no utility to the IRS because it already knows what the debtor owes. It has assessed that debt. That debt is a co-aid and collectible debt. So so is it is it fair to describe the IRS position as simply saying the Baird rule applies and then applying the Baird rule? We have an objective test for factor for which is that if we have already calculated the test, then the taxpayer fails for. Yes, but in the opposite order, we the outcome under the IRS test will be consistent with that reading of your factor for even. But the Baird test is not a predicate to the IRS analysis. Can I then ask a practical follow up question? You've got different IRS offices in different areas. And are these determinations then not going to be uniform throughout the country? Some will be faster done and others will be slower done just because of the burdens on those offices. I think there are two readings of your question, and one is the time that it takes for IRS employees to process the case. And that will be a function of backlog versus the analysis the IRS performs and the time cost of doing a factual analysis. As to the former, that's already the case and is not affected by the rule adopted by the court. And as to the latter, the bright line rule endorsed by the IRS, which is has the debt been assessed before anything was filed, makes quick work of any factual inquiry. And on that point, I see my time is up, but I want to emphasize that no... You haven't answered my question as to whether there will be variations across the country in answering. Yes. And the answer has got to be yes, isn't it? It is. That's correct. And that is the current state of affairs. May I ask another question? Sure. Go ahead. You said that there were really two reasons that you wanted to get this clarified in some fashion, however. One was your own purposes, and I take that just resource allocation, how the various of the offices, as Judge Lynch was indicating, would treat returns that come in and whether or not they were going to invest time to deal with them. But the second, I guess, is a more fundamental question. Why can't the IRS do this itself? Why can't it do it with regulations itself? The IRS is governed... Right. You've got a statute. The statute, at least, is suggested to be ambiguous. Isn't this an area in which the IRS could announce that as a matter of IRS policy, this is the way we're going to treat these things? And to the degree that it's a bright line, then the courts will be happy. To the degree that it's not so bright a line, they won't be. But in any event, you're the mistress of your own fate here to some degree. Your Honor, the IRS has done so, but it has not done so in a regulation. It has done so in a chief counsel notice. But you have the right to do it in a regulation, don't you? The IRS does have a right to promulgate regulations. Okay, so you've chosen to go by your chief counsel's advice. I understand that. That's maybe a less rigorous version of this. But you can do everything that you've asked for. It is theoretically within the power of the IRS. You don't have two years to wait to answer that question. Your Honor, we would respectfully suggest that promulgating a regulation today that is at odds with precedent in 11 of the 13 circuits would lead to scrutiny that would not necessarily render this process more efficient. Okay, so now we're all back to this question of what's the most efficient way to get a resolution of this nationwide issue? Well, that will be a determination for the court ultimately to make. Thank you. I believe we have a rebuttal argument. Thank you, Attorney Avetta. Please mute your camera and your audio. And I believe Attorney Pato has a three-minute rebuttal. Thank you, Your Honor. I have five quick points for rebuttal. The first of which is regarding a vehicle and clarity on this issue. This is the cleanest vehicle the Supreme Court will ever get if it wants to address this. The cases referred to by my friend that came up in other circuits were cases that had gone well beyond judgment on the pleadings where they were getting into the facts of whether there was a good excuse, a bad excuse, etc. This is a nice fahy isolated decision that has judgment on the pleadings where all they argued for in bankruptcy court was fahy we win and that's what they got and fahy we won. If it's above Judge Woodlock's pay grade, it's above my pay grade about whether the First Circuit wants to deal with this in bank or just let it go up. But this is a clean vehicle that could resolve this issue. The second point is I disagree with the characterizations that we would lose under an interpretation. In fact, in my reply brief, I write at length as to how we would probably win under most interpretations of Beard. I'll just let it go to the reply brief. I don't want to take your time now. Suffice to say I want my disagreement with that characterization on the record regarding our utility and the continued vitality of the Eighth Circuit's approach. The third point is if we do get into policy and whether a late return has utility or not and I don't want to get into a fight with Judges Posner and Easterbrook on this, I'll simply stand on the fact that the IRS processed the return and took subsequent accident in his tax record and adjusted the amount owing, etc. So it was far from a nullity. It was a filing that generated legal action from the IRS. The fourth point is regarding Justice Lynch's questions about would we have non-uniformity. We absolutely have non-uniformity and it's caused by fahy. Right now, if the one-day late rule doesn't govern, the IRS will not object if the tax return is filed one day late as long as it's before they do their assessment. I understand they care a lot about the assessment. But if it's one day late and there's not a fahy rule, the IRS will not object. If they're in the First Circuit, they will object under the fahy rule. So quite frankly, I don't even know whether they would join me in a cert petition if fahy is upheld or whether they would oppose fahy or not. But they have complete disuniformity around the country. So we have a bit of a mess. The last thing is regarding the IRS test. No court has adopted that for good reasons in the reply brief. It is a bright line rule but it's a bright line rule that's uniformly rejected as infeasible and unfair to taxpayers and it's been wisely rejected. But as for the broader attraction to a bright line test which Judge Lynch brought up to is I think maybe there's sense to a bright line rule but with respect, I don't think that's for this court to decide. I think we have to go with what Congress decided. In enacting the hanging paragraph, Congress said follow applicable non-bankruptcy law. For better or for worse, in the federal IRS system, that is the beard test and the beard test is a four-pronged test. And if Congress wanted brighter linearity, they would have said something more specific than that than just say apply applicable non-bankruptcy law. And so I think the 8th Circuit has the crispest interpretation of beard if you want to go that far. I don't think you need to go that far. We have a clean procedural posture of judgment on the pleadings. They asked for us to lose under fahy. We lost under fahy. We would love you to reconsider fahy. We defer to the 1st Circuit of how it wants to conduct its affairs. And if not, we will try to seek clarity from this at a higher level. Thank you very much unless you have further questions. No, thank you.